UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CAITRIN KENNEDY,

                         Plaintiff,
   v.                                         **DECISION AND ORDER**
                                                  14-CV-990S

THE STATE OF NEW YORK, et al.,

                         Defendants.

## I. INTRODUCTION

Plaintiff, Caitrin Kennedy, brings this action against Defendants the State of New York ("State"), the New York State Assembly ("Assembly"), former New York State Assembly Member Dennis Gabryszak, Gabryszak's former chief of staff Adam Locher, and former State Assembly Member and Speaker Sheldon Silver, asserting claims for hostile work environment and sexual harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and 42 U.S.C. § 1983, as well as supplemental state law claims under New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 *et seq.* Defendants State and Assembly move to dismiss the claims against them under Federal Rules of Civil Procedure ("FRCP") 12(b)(1) and (b)(6); Defendants Gabryszak and Silver move to dismiss under FRCP 12(b)(6).[1] For the reasons discussed below, the motions by State, Assembly, and Silver are granted, and the motion by Gabryszak is denied.

## II. BACKGROUND

For purposes of this decision, the allegations of the Amended Complaint can be

---

[1] Defendant Locher did not move to dismiss the claims against him.

summarized as follows: Kennedy was hired on or about September 30, 2013, to act as Director of Community Relations in Defendant Gabryszak's regional office in Cheektowaga, NY. (Am. Compl. ¶¶ 19, 23.) From that date until the close of the Cheektowaga office upon Gabryszak's resignation in January 2014, Kennedy worked under Gabryszak's supervision, with Locher as her "immediate manager/supervisor." (Id. ¶¶ 23, 45.)

Almost immediately upon Kennedy's hiring, Gabryszak began making comments, gestures, and advances of a sexual nature toward her. (Id. ¶ 1.) Kennedy alleges, *inter alia*, that Gabryszak invited her to a couples' massage (id. ¶ 22), asked her whether she had a boyfriend and stated that she should "become pregnant" (id. ¶ 24), frequently made comments about strip clubs and prostitutes and invited Kennedy to go to strip clubs with him (id. ¶¶ 25, 29), embarrassed her by purchasing a gift for her at a work event (id. ¶ 28), caused her to view pictures of "scantily clad women" on a camera belonging to the office (id. ¶ 33), and made various comments about her looks (id. ¶¶ 41-42). Kennedy claims that Gabryszak's unwelcome and offensive advances grew more "outrageous over time," and that she "made every attempt to avoid Defendant Gabryszak but her primary job duties could not be accomplished without regular interaction with him." (Id. ¶ 30.) Kennedy also alleges that she made several complaints regarding the behavior to Locher, who took no action except to tell her that this "was just how Dennis (Defendant Gabryszak) was." (Id. ¶¶ 3, 26, 30.)

Kennedy claims that although Silver, as Assembly Speaker, published a sexual harassment policy governing the Assembly, he failed to disseminate that policy and to properly train her or other employees. (Id. ¶¶ 62-63.) Because of this, Kennedy was

2

not aware how to safely report a complaint for sexual harassment. (Id. ¶ 21.) She also alleges that the State, Assembly, and Silver failed to properly train and supervise Gabryszak and Locher regarding sexual harassment in the workplace, and that six other former Gabryszak staffers have now sued him in state court for sexual harassment. (Id. ¶¶ 51-58, 75, 95.) Furthermore, she alleges other publicly-known prior instances of sexual harassment in the Assembly as evidence that Silver had a history of condoning unlawful gender-based discrimination by male Assembly Members and thereby "created a *de facto* policy" condoning sexual harassment during his time as Assembly Speaker. (Id. ¶¶ 64-75.)

Kennedy filed a claim of discrimination with the State Division of Human Rights and the Equal Employment Opportunity Commission ("EEOC"). (Id. ¶ 48.) Upon receiving a notice of right to sue, Kennedy brought this action. (Id. ¶ 49.)

### III. DISCUSSION

**A.  Title VII Claims**

Kennedy's first cause of action alleges that Defendants State and Assembly discriminated against her on the basis of her gender in violation of Title VII by subjecting her to a hostile work environment. Defendants State and Assembly move for dismissal of this claim for lack of subject-matter jurisdiction under FRCP 12(b)(1).

Kennedy, as the party seeking to invoke this Court's jurisdiction, bears the burden of demonstrating proper subject-matter jurisdiction. Scelsa v. City Univ. of N.Y., 76 F.3d 37, 40 (2d Cir. 1996). In turn, a defendant may assert lack of subject-matter jurisdiction as a defense under FRCP 12(b)(1), which permits dismissal of an action if the "district court lacks the statutory or constitutional power to adjudicate it." Makarova

v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In assessing a Rule 12(b)(1) motion, this Court accepts as true all material factual allegations in the Amended Complaint, but does not draw inferences favorable to the party asserting jurisdiction. See J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004); Shipping Fin. Svcs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998).

State and Assembly argue that this Court does not have subject-matter jurisdiction over Kennedy's claims against them because Kennedy was a member of Gabryszak's "personal staff," which is "an employment category Title VII expressly exempts from its definition of employee." See Maioriello v. New York, No. 105CV-1062 NAM/DRH, 2008 WL 398483, at *8 (N.D.N.Y. Feb. 12, 2008) (citing 42 U.S.C. § 2000e(f)). State and Assembly assert that, because Title VII is inapplicable, Kennedy must instead pursue her claims with the EEOC and the Second Circuit, pursuant to the Government Employee Rights Act of 1991, 42 U.S.C. § 2000e-16c ("GERA").[2] Kennedy argues that the assessment of whether she falls within the Title VII personal-staff exemption is a fact-intensive inquiry that cannot be decided on a motion to dismiss.

Title VII states, in relevant part:

The term "employee" means an individual employed by an employer, except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, or any person chosen by such officer to be on such officer's personal staff, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the constitutional or legal powers of the office.

42 U.S.C. § 2000e(f). Title VII does not define "personal staff," however the report of

---

[2] GERA provides that State employees who are "chosen or appointed[ ] by a person elected to public office" as a member of their personal staff, and allege discrimination based upon race, color, religion, sex, national origin, age, or disability, may file a complaint with the EEOC and seek review from the Circuit Court. 42 U.S.C. §§ 2000e-16c (a), 2000e-16c(c).

the conference committee of the House and Senate on this section states, in relevant part:

> It is the intention of the conferees to exempt elected officials and members of their personal staffs, and persons appointed by such elected officials as advisors or to policymaking positions at the highest levels of the departments or agencies of State or local governments, such as cabinet officers, and persons with comparable responsibilities at the local level. It is the conferees [sic] intent that this exemption shall be construed narrowly.

(1972) U.S. Code Cong. & Ad. News 2180.

There is no dispute that Gabryszak was an elected official under New York Constitution Article III, § 2. Thus, the parties dispute only whether Kennedy was a member of Gabryszak's "personal staff" for purposes of the Title VII exemption. The Second Circuit has not directly addressed the "personal staff" exemption to Title VII's definition of employee, though it has considered the "policy maker" exemption. See e.g., Butler v. New York State Dep't of Law, 211 F.3d 739 (2d Cir. 2000) (finding the Deputy Bureau Chief in Attorney General's Office was policy maker within meaning of statute so as to exempt her from protection under Title VII); see also Tranello v. Frey, 962 F.2d 244, 250-51 (2d Cir. 1992) (holding, under identically worded exemption to ADEA, that policy maker must be chosen by elected official). "The Second Circuit has twice suggested, however, that an elected official's personal staff and his immediate advisors 'refer to persons who would work closely with the elected official.'" Maioriello, 2008 WL 398483, at *8-9 (quoting EEOC v. State of Vermont, 904 F.2d 794, 798 (2d Cir. 1990), *overruled on other grounds by* Gregory v. Ashcroft, 501 U.S. 452 (1991); see also Tranello, 962 F.2d at 249 (finding that the "personal staff" category of employee in the ADEA "plainly contemplate[s] exemption for persons with a direct relationship to an

5

elected official"). District courts in this Circuit, when assessing the personal staff exemption, have looked to the level of closeness in the working relationship, as well as whether there was an "intima[te] and confidential relationship between an elected official and his or her [employee] in the performance of the official's duties," and whether the employee "occupie[d] a position of trust and sensitivity." Bland v. New York, 263 F. Supp. 2d 526, 541 (E.D.N.Y. 2003).

Under a plain reading of the Amended Complaint and the affidavit submitted by Kennedy,[3] she meets the standards suggested by the Second Circuit. With respect to the Second Circuit's suggestion that personal staff "refer[s] to persons who would work closely with the elected official," see EEOC v. State of Vermont, 904 F.2d at 798, Kennedy's pleadings and supplemental affidavit are replete with references to her close working relationship with Gabryszak. In addition to Kennedy's assertion that she "worked alongside" Gabryszak "on a regular basis" (Am. Comp. ¶ 23), her allegations as to the frequency of Gabryszak's harassing comments highlight how close that relationship was, as well as the regularity of their interaction. (Aff. ¶ 7 ("I would inevitably have to face Gabryszak on a near daily basis. . . . At one point, he was harassing me several times a day.").) Similarly, the numerous locations where harassment allegedly took place outside the office emphasize the extent of time spent together in the few months that Kennedy worked for Gabryszak. (Am. Compl. ¶ 22 (alleging harassment in Albany), ¶¶ 27-28 (alleging harassment at a benefit for the Young Women's Christian Association), ¶¶ 34-40 (alleging harassment at a staff holiday

---

[3] Kennedy's affidavit is properly considered with respect to the FRCP 12(b)(1) argument. See J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d at 110 (affidavits and other materials beyond the pleadings may be considered on a 12(b)(1) motion). However, any facts in the affidavit that are not pled in the Amended Complaint will not be considered with respect to the FRCP 12(b)(6) motions.

party in New York City), ¶ 42 (alleging harassment at a holiday party in Amherst, New York), ¶ 43 (alleging harassment at a holiday luncheon in Buffalo).) Indeed, Kennedy asserts that though she "made every attempt to avoid Defendant Gabryszak[, . . . ] her primary job duties could not be accomplished without regular interaction with him." (Id. ¶ 30.)

Although "[t]he court must look to the general attributes of the position, not the actual performance of the job, to determine whether the employee could be required to work closely with the appointing official," Zagaja v. Vill. of Freeport, No. 10-CV-3660 JFB SIL, 2015 WL 3507353, at *6 (E.D.N.Y. June 3, 2015), it appears that Gabryszak had great control over the attributes of the position and effectively chose how much involvement Kennedy's position would have. Kennedy attempts to minimize the intimacy and trust of her position, noting that "Gabryszak relied heavily on Locher and would rarely share confidential or sensitive information with me. . . . Any attempt to engage Gabryszak regarding my work, to have him take supervisory control over my work [sic] was always met with sexual harassment as a response." (Aff. ¶ 6.) Whether or not Gabryszak may have met Kennedy's attempts to engage him with sexual harassment, the fact that she thought she should be engaging with him directly, as well as the fact that Gabryszak sometimes shared confidential or sensitive information with Kennedy, highlights that Kennedy's position was meant to be one of "trust and sensitivity." See Bland, 263 F. Supp. 2d at 541.

In addition to the suggestion made by the Second Circuit as to the "personal staff" exemption, district courts in this Circuit have also looked to the Fifth Circuit's analysis for guidance. See, e.g., Smith v. Town of Hempstead, 21 F. Supp. 3d 202,

204-05 (E.D.N.Y. 2014); Bland, 263 F. Supp. 2d at 539-40. Under that line of cases, "[w]hether an individual is part of an elected official's 'personal staff' generally involves a 'highly factual' inquiry that focuses on the 'nature and circumstances of the employment relationship between the complaining individual and the elected official,' an inquiry that 'does not lend itself well to disposition by summary judgment.'" Smith, 21 F. Supp. 3d at 204-05 (quoting Teneyuca v. Bexar County, 767 F.2d 148, 151-52 (5th Cir. 1985)). In Teneyuca, the Fifth Circuit identified the following non-exhaustive list of factors for determining whether a plaintiff was a member of an elected official's personal staff:

> (1) whether the elected official has plenary powers of appointment and removal, (2) whether the person in the position at issue is personally accountable to only that elected official, (3) whether the person in the position at issue represents the elected official in the eyes of the public, (4) whether the elected official exercises a considerable amount of control over the position, (5) the level of the position within the organization's chain of command, and (6) the actual intimacy of the working relationship between the elected official and the person filling the position.

Id. at 151.

With respect to these factors, the facts as pleaded by Kennedy demonstrate that she meets the Fifth Circuit criteria for personal staff. First, Gabryszak held the power of appointment and removal for Kennedy's position. Kennedy was hired directly by Gabryszak, who interviewed her together with Locher, his chief of staff (Am. Compl. ¶ 19), Gabryszak provided performance evaluations, sought authority from the Assembly to give her a raise, and promised future raises (id. ¶ 31). Kennedy also pleads that Gabryszak assured her that she would remain employed (id.), but that she feared he would remove her if she complained about his alleged sexual harassment or failed to cooperate with it (Aff. ¶¶ 10, 11). Second, Kennedy was personally accountable to Gabryszak. Kennedy states that she was told that Locher was her "unit

8

head" (Aff. ¶ 4), and she refers to him as her "immediate supervisor" (Am. Compl. ¶ 3) who provided her assignments and was often the sole provider of input on her work (Aff. ¶ 6). However, the gravamen of her Complaint establishes that Kennedy was ultimately accountable to Gabryszak, who was her supervisor (Am. Compl. ¶¶ 16, 19) and who ultimately had control over her position. Third, the nature of Kennedy's position, as Gabryszak's "Director of Community Relations," is that of a representative of the Assembly Member in the eyes of the public (id. ¶ 19), and Kennedy interacted directly with Gabryszak's constituents at events (id. ¶ 42). Fourth, Gabryszak exercised a considerable amount of control over Kennedy. He compelled her to attend various activities, including out of town activities (id. ¶¶ 22, 27-28, 34-40, 42, 43), and Kennedy was not capable of performing "her primary job duties . . . without regular interaction with him" (id. ¶ 30). Fifth, within Gabryszak's administration, Kennedy reported either directly to Gabryszak or one step below him, to Locher. (Id. ¶¶ 16, 17, 19). Finally, as discussed above with respect to the Second Circuit factors, Kennedy and Gabryszak had a close working relationship and spent considerable time together despite Kennedy's short tenure in Gabryszak's regional office.

Thus, upon review of the allegations of the Amended Complaint and the affidavit submitted by Kennedy in response to Defendants' motion, this Court finds that she falls within the personal-staff exemption to Title VII.[4] Because this Court therefore lacks subject-matter jurisdiction over her claims against Defendants State and Assembly, their

---

[4] Kennedy states (without any support) that jurisdiction is proper in this Court because the Notice of Right to Sue Letter that she received from the EEOC "allow[s] this lawsuit in federal court." Pl. Opp. at 5. However, the EEOC did not reach a determination as to whether Kennedy is an employee under Title VII and, "even if the EEOC had reached this issue, it would not preclude consideration of the question in this case." See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 799, 93 S.Ct. 1817, 36 L. Ed. 2d 668 (1973) ("in view of the large volume of complaints before the Commission and the nonadversary character of many of its proceedings, court actions under Title VII are de novo proceedings . . .") (internal quotation omitted).

motion to dismiss the Title VII claims under FRCP 12(b)(1) is granted.[5]

## B. Section 1983 and NYSHRL Claims

Kennedy brings claims under both 42 U.S.C. § 1983 and New York State Human Rights Law, alleging that Gabryszak, Silver, and Locher's actions created a hostile work environment.[6] Gabryszak and Silver move to dismiss those claims under FRCP 12(b)(6).

Rule 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss pursuant to Rule 12 (b)(6), this Court must accept all factual allegations in the complaint as true and make all reasonable inferences in a plaintiff's favor. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). To survive such a motion, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). This assumption of truth applies only to factual allegations and is inapplicable to legal conclusions. Iqbal, 556 U.S. at 678. In determining whether dismissal is warranted, a court is also entitled to consider, as relevant here:

---

[5] Because this Court has found that it lacks subject-matter jurisdiction over the claims against Defendants State and Assembly, it need not address their FRCP 12(b)(6) argument.
[6] The first page of the Amended Complaint names Gabryszak, Locher, and Silver in both their personal and official capacities. (Am. Compl. p. 1.) However, the specific claims are made only with respect to the defendants as individuals. (See id. ¶¶ 79, 84, 89, 93.) To the extent that Kennedy intended to make claims against Gabryszak, Locher, and Silver as agents of the state, this Court does not have subject-matter jurisdiction over such claims. Allessi v. New York State Dep't of Corr. & Cmty. Supervision, 16 F. Supp. 3d 221, 225-26 (W.D.N.Y. 2014) (dismissing NYSHRL claim against defendant in his official capacity for lack of subject-matter jurisdiction) (citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L. Ed. 2d 45 (1989) (suit against state official in his or her official capacity is a suit against the state)).

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, . . . , and [4] facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

In re Merrill Lynch & Co., Inc., 273 F. Supp. 2d 351, 356-357 (S.D.N.Y. 2003) (footnotes omitted), *aff'd* 396 F.3d 161 (2d Cir. 2005), *cert. denied,* 546 U.S. 935 (2005).

An action under § 1983 has two elements: the defendant must (1) act under "color of state law" to (2) deprive the plaintiff of a statutory or constitutional right. Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 122 (2d Cir. 2004). Sexual harassment that "transcends coarse, hostile and boorish behavior" is actionable under § 1983 as a violation of the Equal Protection Clause. Annis v. Cnty. of Westchester, N.Y., 36 F.3d 251, 254 (2d Cir. 1994). Section 1983 may be utilized "against a public official for improper sexual conduct toward an employee that create[s] a hostile work environment." Saulpaugh v. Monroe Community Hosp., 4 F.3d 134, 143-44 (2d Cir. 1993), *cert. denied*, 510 U.S. 1164, 114 S.Ct. 1189, 127 L. Ed. 2d 539 (1994).

"To establish a hostile-work environment claim under Section 1983, a plaintiff must demonstrate that (1) she was intentionally harassed; (2) the harassment was based on her race or gender; (3) such actions were taken under color of state law; and (4) the harassment was so severe as to render the work environment hostile to her." Rodriguez v. City of New York, 644 F. Supp. 2d 168, 199 (E.D.N.Y. 2008). When evaluating a hostile work environment claim, courts should consider the totality of the circumstances, such as the frequency and severity of the conduct, whether it was physically or verbally threatening, and whether it unreasonably affected the employee's

job performance. Rivera v. Rochester Genesee Reg'l Transp. Auth., 743 F.3d 11, 20 (2d Cir. 2014). The analysis has both "objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." Id. (internal quotation omitted).

The substantive elements of a hostile work environment claim under the NYSHRL are essentially the same as under § 1983. See Pedrosa v. City of New York, No. 13 CIV. 01890 LGS, 2014 WL 99997, at *7 (S.D.N.Y. Jan. 9, 2014); see also Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2, 798 F. Supp. 2d 443, 451 (E.D.N.Y. 2011) ("The standard for showing a hostile work environment under Title VII, . . . Section 1983, and the New York State Human Rights Law is essentially the same.").

1. Gabryszak

Kennedy alleges that Gabryszak repeatedly made comments, gestures, and advances of a sexual nature toward her. (Am. Compl. ¶ 1.) Despite the short period of her employment, Kennedy cites numerous statements and incidents, beginning from her earliest interactions with Gabryszak and continuing until his resignation. (Id. ¶¶ 22, 24, 25, 29, 33, 41-42, 43.) Gabryszak argues that the alleged conduct did not "transcend[ ] coarse, hostile and boorish behavior" so as to be actionable under § 1983, see Annis, 36 F.3d at 254, and that Kennedy's job performance was not impacted by Gabryszak's behavior.[7]

---

[7] Gabryszak, citing Annis, 36 F.3d at 254, also argues that sexual discrimination claims under § 1983, as opposed to those under Title VII, require "conduct evidently calculated to drive someone out of the workplace." This approach is not one commonly followed in the Second Circuit. See, e.g., Patterson v. Cty. of Oneida, N.Y., 375 F.3d 206, 225 (2d Cir. 2004) (enumerating the differences and similarities

12

Anti-discrimination statutes are not a "general civility code," see Bickerstaff v. Vassar College, 196 F.3d 435, 452 (2d Cir. 1999), and a few isolated incidents of "boorish or offensive use of language" are generally insufficient to establish a hostile work environment.  See Benette v. Cinemark U.S.A., Inc., 295 F. Supp. 2d 243, 251-252 (W.D.N.Y. 2003); Kotcher v. Rosa & Sullivan Appliance Ctr., 957 F.2d 59, 62 (2d Cir. 1992) ("incidents must be repeated and continuous; isolated acts or occasional episodes will not merit relief"); Carrero v. New York City Hous. Auth., 890 F.2d 569, 577 (2d Cir. 1989) ("The incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.").  However, when the incidents are extremely frequent, particularly over such a short period of time, it is reasonable to infer that work conditions were "altered for the worse."  See Fitzgerald v. Henderson, 251 F.3d 345, 358 (2d Cir. 2001) ("While a mild, isolated incident does not make a work environment hostile, the test is whether the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.") (internal quotation omitted)); see also Alfano v. Costello, 294 F.3d 365, 379 (2d Cir. 2002) ("There is no fixed number of incidents that a plaintiff must endure in order to establish a hostile work environment; rather, we view the circumstances in their totality, examining the nature, severity, and frequency of the conduct.").

Accepting all factual allegations in the Amended Complaint as true and making all reasonable inferences in Kennedy's favor, this Court finds that Kennedy has plausibly stated a § 1983 claim against Gabryszak.  "The instances of harassment

---

between Title VII and § 1983 claims); Feingold v. New York, 366 F.3d 138, 159 (2d Cir. 2004) (Once action under color of state law is established, [plaintiff's § 1983] claim parallels his Title VII claim.  The elements of one are generally the same as the elements of the other . . .) (footnote omitted).

articulated by [Kennedy] in her [Amended Complaint] are more than single, isolated examples of verbal abuse." See Dunbar v. Cty. of Saratoga, 358 F. Supp. 2d 115, 124 (N.D.N.Y. 2005) (denying motion for summary judgement where plaintiff alleged "eight specific incidents with decidedly sexual overtones over the course of her fifteen months of active employment" and other general allegations as to frequency). Rather, Kennedy has pled facts demonstrating a series of actions and incidents sufficiently pervasive to plausibly state a claim for a hostile working environment. In view of all the circumstances, this Court finds that Kennedy's § 1983 claim against Gabryszak is sufficient to withstand dismissal. Because the elements of a hostile work environment claim under NYSHRL are substantially similar to those under § 1983, see Pedrosa, 2014 WL 99997, at *7, the NYSHRL claim against Gabryszak is also sufficiently pled. Defendant Gabryszak's motion to dismiss the claims against him is therefore denied.

2. Silver

Kennedy alleges that Silver, as the former Speaker of the Assembly, "enabled, condoned and allowed" Gabryszak's alleged harassment by failing to disseminate the Assembly's sexual harassment policy and to properly train Gabryszak and Locher.[8] (Am. Compl. ¶¶ 2, 4, 63.) She also alleges that Silver created a de facto policy condoning sexual harassment in the Assembly, citing several instances where female staffers were harassed by Assembly Members. (Id. ¶¶ 4, 64-72.)

Silver recently faced similar claims in Burhans v. Lopez, 24 F. Supp. 3d 375

---

[8] Together with his Motion to Dismiss, Silver submits a number of additional documents, including the Assembly's Sexual Harassment Policy and sign-in sheets for sexual harassment trainings. This Court takes notice of these additional documents for the purposes of this motion only to the extent that Kennedy had notice or possession of them and relied on them in her Amended Complaint. Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) ("a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough") (emphasis in original).

(S.D.N.Y. 2014). In that case, two staffers of former Assembly Member Vito Lopez sued Silver and Lopez in connection with alleged sexual harassment. Id. Their allegations differed from Kennedy's in that they "claim[ed] that Silver was aware of prior incidents of sexual harassment involving Lopez and concealed them through confidential settlements and hushed reassignments." Id. at 382. Here, there is no allegation that Silver had any knowledge—actual or constructive—of Gabryszak's actions toward Kennedy or any other woman. And although Kennedy states that she made multiple "formal" complaints to Locher regarding Gabryszak's behavior, neither Kennedy nor Locher passed those complaints to Silver or anyone on his staff. (Am. Compl. ¶¶ 3, 26, 30.)

   *a. Qualified Immunity*

  Silver argues that he cannot be held liable under § 1983 because he is entitled to qualified immunity. An official is entitled to qualified immunity if his or her "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." DiStiso v. Cook, 691 F.3d 226, 240 (2d Cir. 2012) (quotation omitted). "A right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful." Anderson v. Recore, 317 F.3d 194, 197 (2d Cir. 2003) (internal citation and quotation marks omitted). "A government official's actions are objectively unreasonable 'when no officer of reasonable competence could have made the same choice in similar circumstances.'" Ippolito v. Goord, No. 05-CV-6683 MAT, 2012 WL 4210125, at *17 (W.D.N.Y. Sept. 19, 2012) (quoting Lennon v. Miller, 66 F.3d

416, 420-21 (2d Cir. 1995)).

Kennedy has pled conduct that violates a clearly established statutory or constitutional right. She claims that she was deprived of "a sexual harassment-free workplace—and under the well-defined law of the Second Circuit, [she was] entitled to one." Burhans, 24 F. Supp. 3d at 384 (citing Saulpaugh, 4 F.3d at 143-44). "[A]n official's failure to remedy known sexual harassment complaints has defeated claims of qualified immunity in the past." Id. at 385 (citing Emblen v. Port Auth. of New York/New Jersey, 00 Civ. 8877, 2002 WL 498634, at *11 (S.D.N.Y. Mar. 29, 2002) (finding that the defendants were not entitled to qualified immunity when they were alleged to have chosen to ignore harassing behavior that "violated internal Port Authority regulations which were based in part on federal law"); see also Wise v. New York City Police Dep't, 928 F. Supp. 355, 370-71 (S.D.N.Y. 1996) (denying qualified immunity when a supervisor's knowledge of harassment and failure to take remedial measures were disputed issues of material fact)). However, that is not the case here. Silver did not sexually harass Kennedy, did not observe Gabryszak's alleged misconduct, and was never personally aware of Kennedy's allegations. This Court finds that, based on the allegations as pled, it was objectively reasonable for Silver to believe that his conduct did not violate the law and he is therefore entitled to qualified immunity.

*b. Personal Involvement*

"[A] defendant in a § 1983 action may not be held liable for damages for constitutional violations merely because he held a high position of authority." Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996). Rather, the "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of

damages under § 1983." Farrell v. Burke, 449 F.3d 470, 484 (2d Cir.2006) (internal quotation marks omitted). "Because vicarious liability is inapplicable to . . . § 1983 suits," Kennedy must plead sufficient facts to show that Silver, "through [his] own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. Personal involvement may be demonstrated by evidence that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.

Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013) (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)).

In the context of sexual harassment, inaction may be actionable, and a failure to promptly and properly respond to complaints may constitute personal involvement under anti-discrimination laws. See Duch v. Jakubek, 588 F.3d 757, 766 (2d Cir. 2009); Ferris v. Delta Air Lines, Inc., 277 F.3d 128, 136 (2d Cir. 2001) ("If an employer is on notice of a likelihood that a particular employee's proclivities place other employees at unreasonable risk . . . the employer does not escape responsibility to warn or protect likely future victims merely because the abusive employee has not previously abused those particular employees."). However, personal involvement is generally found only when the defendant had notice of the alleged misconduct and failed to act on that knowledge. See Saxon v. Attica Med. Dep't, 468 F. Supp. 2d 480, 483 (W.D.N.Y. 2007) ("personal involvement can be established upon a showing that a supervisory official became aware of a violation and failed to remedy it"); Bass v. World Wrestling Fed'n

17

Entm't, Inc., 129 F. Supp. 2d 491, 501 (E.D.N.Y. 2001) (denying motion to dismiss Title VII claims against an employer when harassers' conduct was "well-known" by senior management); Wise, 928 F. Supp. at 368-69 (finding that a supervisory officer could be personally involved in an alleged deprivation of rights when the plaintiff had proffered evidence that the officer knew of the harassment but failed to remedy it).

Indeed, because there is no allegation that Silver participated directly in the sexual harassment, his only possible "personal involvement" would be through indirect action. Assuming, *arguendo*, that Silver was Gabryszak's supervisor, the allegations do not support negligent supervision. See Colon, 58 F.3d at 873-74 (finding no basis for personal involvement based on negligent supervision in a complaint that "certainly contains nothing that would support a claim that [defendant] either knew or should have known of the events of which [plaintiff] complains"). Kennedy also has not alleged that Silver had notice of Gabryszak's actions and acted with deliberate indifference toward them. See Pettus v. Morgenthau, 554 F.3d 293, 300 (2d Cir. 2009) ("To the extent that the complaint attempts to assert a failure-to-supervise claim, moreover, it lacks any hint that [defendant supervisor] acted with deliberate indifference to the possibility that his subordinates would violate [plaintiff]'s constitutional rights."). Nor does the Amended Complaint support personal involvement through the conscious creation of policies or customs supporting sexual harassment. See Green v. Wright, No. 09-CV-1106A, 2010 WL 3474973, at *2 (W.D.N.Y. Sept. 1, 2010) (motion to dismiss granted where plaintiff failed to plead facts "that would at least imply a conscious" violation of constitutional rights resulted "as a matter of policy" created by defendant). Again, Kennedy does not plead that Silver encouraged harassment in the Assembly—on the contrary, Silver

published an anti-harassment policy. (Am. Compl. ¶ 62.) Moreover, although the incidents cited in the Amended Complaint concerning harassment within the Assembly (id. ¶¶ 64-72) are disturbing, they do not sufficiently allege Silver's personal involvement in the conduct at issue here. Therefore, the § 1983 claim cannot go forward against Silver.

### c. NYSHRL

"An individual can be liable under Section 296(6) so long as he 'actually participates in the conduct giving rise to a discrimination claim.'" Edwards v. Jericho Union Free Sch. Dist., 904 F. Supp. 2d 294, 304 (E.D.N.Y. 2012) (quoting Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995), *abrogated on other grounds by* Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257, 141 L. Ed. 2d 633 (1998)); Allessi, 16 F. Supp. 3d at 226 ("a state employee may be held liable in his or her individual capacity under N.Y. Executive Law § 296(6) for aiding, abetting, inciting, compelling or coercing a discriminatory act forbidden by NYSHRL"). Having found that Kennedy has not pled that Silver had "personal involvement" under her § 1983 claim, this Court finds that Kennedy's NYSHRL claim fails on similar grounds. Stevens v. New York, 691 F. Supp. 2d 392, 401 (S.D.N.Y. 2009) (a plaintiff "must assert personal involvement of each of the individual defendants in order to proceed with claims based on" § 1983 and NYSHRL). Kennedy does not allege that Silver actually participated in Gabryszak's alleged discriminatory conduct, nor that he was aware of any misconduct by Gabryszak. The NYSHRL claim against Silver should therefore be dismissed.[9]

---

[9] Having dismissed all claims against Silver, this Court need not consider his argument regarding Kennedy's inability to claim a pecuniary loss. However, a pecuniary loss is not necessarily required for success in a § 1983 claim. See Bryant v. McGinnis, 463 F. Supp. 373, 388 (W.D.N.Y. 1978) (finding, on a § 1983 claim, "sufficient precedent exists to support granting of non-punitive damages for the

19

## IV. CONCLUSION

The Court finds that it does not have subject-matter jurisdiction over Kennedy's Title VII claims against Assembly and State because Kennedy is not an "employee" within the meaning of that statute, therefore all claims against Assembly and State are dismissed without prejudice. Because Kennedy failed to state a claim against Silver, and because he is entitled to qualified immunity under the facts as pled in the Amended Complaint, all claims against him are also dismissed without prejudice. The claims against Gabryszak will go forward.

## V. ORDERS

IT HEREBY IS ORDERED that Defendants State of New York and New York State Assembly's motion to dismiss the Amended Complaint (Docket No. 30) is GRANTED;

FURTHER, that Defendant Sheldon Silver's motion to dismiss the Amended Complaint (Docket No. 32) is GRANTED;

FURTHER, that Defendant Dennis Gabryszak's motion to dismiss the Amended Complaint (Docket No. 36) is DENIED.

SO ORDERED.

Dated: March 3, 2016
Buffalo, New York

    /s/William M. Skretny
    WILLIAM M. SKRETNY
    United States District Judge

---

deprivation of intangible rights for which no pecuniary loss can be shown").